# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO. 4:04 CR 465** |
| | ) | |
| **PLAINTIFF** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **JUAN L. HERIOT** | ) | **AND ORDER** |
| | ) | |
| **DEFENDANT** | ) | |

This matter is before the Court upon the Defendant Juan L. Heriot's Motion for New Trial. See (Dkt. # 47).

**I.   BACKGROUND**

The Grand Jury of the United States District Court for the Northern District of Ohio (the "Grand Jury") issued an Indictment on September 14, 2004 charging the Defendant, Juan L. Heriot, with five counts of distributing cocaine base ("crack") as proscribed by 21 U.S.C. § 841 (a)(1), (b)(1)(B). See (Dkt. # 1). The Grand Jury further charged the Defendant as a career offender pursuant to USSG. § 4B1.1 arising from the Defendant's two prior felony convictions for controlled substances offenses.[1] See (Dkt. # 1).

---

[1] In the wake of Blakely v. Washington, 542 U.S. 296 (2004), the United States Attorney's Office for the Northern District of Ohio adopted a practice of requesting the Grand Jury to charge as specifications certain provisions of the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "USSG").

-1-

The Defendant thereafter requested the preparation of a Pre-Plea Presentence Investigation Report. See (Dkt. # 16). The Court granted the request. See (Dkt. # 17).

The Grand Jury issued a Superceding Indictment on February 8, 2005 charging the Defendant with five counts of distributing cocaine base ("crack") as proscribed by 21 U.S.C. § 841 (a)(1), (b)(1)(B), and one count of assault on a federal employee as proscribed by 18 U.S.C. § 111. See (Dkt. # 19). The Government meanwhile filed an Information Pursuant to 21 U.S.C. § 851 therein noticing the Defendant's two prior felony convictions for controlled substance offenses. See (Dkt. # 21).

The United States Probation Office for the Northern District of Ohio issued the requested Pre-Plea Presentence Investigation Report (hereinafter the "Report") on April 15, 2005. The Report indicated that Counts One through Five each subjected the Defendant to a potential statutory sentence ranging from a mandatory minimum of ten years to life imprisonment. The Report further indicated that Count Six subjected the Defendant to a statutory maximum of twenty years imprisonment. The Report also calculated that the Total Offense Level thirty-seven for Counts One through Five and the Defendant's Criminal History Category VI, yielded an advisory Guidelines sentencing range of 360 months to life.

The matter proceeded to a trial by jury on Counts 1 through 5.[2] Jury selection commenced on September 7, 2005. The Government thereafter presented testimony from, *inter alia*, a confidential informant and audio tapes of conversation where the Defendant participated in drug transactions. The Defendant did not present any evidence.

---

[2]The Court bifurcated Count Six pursuant to an agreement entered into between the parties.

Following the closing arguments of counsel on September 8, 2005, the Court instructed the jury. The jury commenced its deliberations at 2:45 p.m. See (Dkt. # 44 at 2). At 3:30 p.m., the jury requested to listen to the audio-tapes that were submitted into evidence. See (Dkt. # 44 at 3). At 5:00 p.m., the Court received notice that the jury desired to retire for the evening. See (Dkt. # 44 at 3). Consequently, the Court instructed the jury not to discuss the status or nature of the deliberations and discharged the jury for the evening. See (Dkt. # 44 at 4).

The jury re-commenced its deliberations at 9:00 a.m. the following day. See (Dkt. # 45). At 1:30 p.m., the Court received a message from the jury enquiring, "Is Juan Heriot also known as DRE, (pronounced Dray)?" See (Dkt. # 45 at 3). Upon assembling the Defendant, defense counsel and the Assistant United States Attorney, the Court informally discussed the question and requested the parties to address the matter on the record.[3] See (Dkt. # 45 at 3). The Government proceeded as follows:

> [T]he jurors should just be advised that they should rely on the evidence. The government's concern is that there is testimony and facts on the record that he [the Defendant] is known as DRO which is very similar, arguably, to Dre. And on the audiotapes, they are to form their own opinions as to what's being heard. And the government's concern is that what's being referred to as Dro within the audiotapes, maybe they're interpreting as Dre. And it is their determination as to what decision they are to draw from what's coming out from the tapes.

---

[3]Upon the commencement of jury deliberations, the Court advised the parties of its custom and practice regarding responding to questions submitted by the jury. The Court advised that it would receive the question, assemble the Defendant, defense counsel and counsel for the Government in the courtroom outside the presence of the jury, discuss the question informally, and thereafter request that the parties place their positions on the record. The Court then would enter the jury deliberation room accompanied by the court reporter and provide a response to the question. See (Dkt. # 44 at 2). The parties consented in this approach. See (Dkt. # 44 at 3).

-3-

> So there is a concern that there might be confusion as to what Dro and Dre is, based upon what they're interpreting, and as a result, the government's position would be just that standard: You are to rely upon your collective recollection of the evidence that was presented at trial and draw your own conclusions based on that evidence as to whether there is evidence regarding his aliases, would be the proper instruction in this case to the jury.

(Dkt. # 45 at 4.)

Counsel for the Defendant responded: "The jury should be instructed that there was no evidence presented during trial that Juan Heriot was also known as Dre." (Dkt. # 45 at 4.)

The Court considered the matter and adopted the Defendant's suggested answer. Accordingly, the Court advised the jury as follows: "[T]here has not been any evidence presented in this case that Juan Heriot is also known as Dre." (Dkt. # 45 at 5.)

At 3:25 p.m. the Court received another message from the jury enquiring: "If we can not reach a unanimous verdict on one of the five counts, what is the effect on the overall outcome of the trial?" See (Dkt. # 45 at 6). Upon re-convening the Defendant, defense counsel and the Government, the Court requested the parties' positions regarding the question. Defense counsel recommended that the "Court re-instruct the jury on separate counts and that each verdict has to be unanimous as to each count and review that instruction with them." (Dkt. # 45 at 6.) Defense counsel also expressed the defense's view that it was "premature to give an Allen charge and discharge the jury."[4] (Dkt. # 45 at 6.) The Government did not object to the Defendant's recommendation, noting: "Maybe just ask

---

[4] As discussed *infra*, the Allen charge refers to the procedures employed by the court when confronting a "deadlocked" jury. See Allen v. United States, 164 U.S. 492, 501-02 (1896).

them if they want to continue deliberating or break until a later time." (Dkt. # 45 at 6.) The Court responded, "I'll do that. What I will do is reread it [the Court's prior instruction regarding consideration of separate counts, see Pattern Criminal Jury Instructions of the District Judges Association of the Sixth Circuit, Instruction No. 2.01A (2005)] verbatim, tell them don't put any emphasis on this particular charge, consider that with the rest of the instructions." (Dkt. # 45 at 6.)

Before the Court addressed the jury, defense counsel enquired whether it was "appropriate to tell the jury if you're not unanimous, that that [sic] will result in a hung jury." (Dkt. # 45 at 6.) The Government objected stating, "That's what the Allen charge is." Defense counsel agreed and the Government suggested that the Court "wait until Monday" to give such a charge. (Dkt. # 45 at 6-7).

The parties proceeded to engage in an informal discussion regarding the possibility that the jury had reached partial verdicts. The Court advised that it was disinclined to accept partial verdicts. The Court further advised, however, that it would attempt to answer the jury's question by utilizing a portion of the partial verdict pattern instruction and remind the jury of its duty to separately consider each count of the Indictment.

Accordingly, the Court answered the jury's question as follows:

Now, ladies and gentlemen, I'm going to give you further instructions. By giving these instructions at this time, I do not overemphasize these instructions over the other instructions given to you previously.

You will consider these instructions and all of the other instructions that were given. And with this understanding, I'll give you this additional law as part of the general instructions of the Court.

Additionally, I will repeat an instruction previously given. Again, by repeating

-5-

> it, I do not emphasize it over any other part of the instructions. Of course, if this does not clarify the law for you, you may, in writing, request further explanation.
>
> Ladies and gentlemen, you do not have to reach unanimous agreement on all of the charges before returning a verdict on some of them. If you have reached unanimous agreement on some of the charges, then continue deliberating on the others.
>
> The Defendant has been charged with several crimes. It is your duty to separately consider the evidence that relates to each charge, and to return a separate verdict for each one, if you can unanimously do so. For each charge you must decide whether the government has presented proof beyond a reasonable doubt that the defendant is guilty of that particular charge. Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any of the other charges.

(Dkt. # 45 at 8.)

At 4:25 p.m., the jury posed its third question to the Court enquiring: "What do we do with the verdict forms if we are finished deliberating all five counts and unable to reach unanimous agreement on some of the counts?" (Dkt. # 45 at 8.) The Court again convened the parties and discussed potential responses to the question. At the conclusion of these discussions, the Court advised:

> We've had a discussion. I'm going to send the jury home and have them return Monday and continue with deliberations.
>
> Counsel and the Court reached an agreement that it's about 4:30 this afternoon. The jury has been deliberating for a day and a half, and I think the best thing to do now is to send the jury home for the weekend, and I will tell them to come back on Monday to continue with their deliberations. All right counsel?

(Dkt. # 45 at 9-10.)

The parties agreed with the Court. However, defense counsel queried: "[A]re we going to seal what they've completed or what they have?" (Dkt. # 45 at 10.) The Court

responded: "The verdicts for which they have reached – apparently some of the verdicts have been reached, and I'll have the jurors place those verdicts in a separate envelope, seal it, . . . and we'll retain custody of the verdicts that have already been reached under seal." (Dkt. # 45 at 10.)

> The Court advised the jury as follows:
>
> What I'm going to do is, my suggestion is that you go home. You've been deliberating for a day and a half, and I think the wise thing to do now is to have you go home this evening, return on Monday, and continue with your deliberations. I'm going to hand you an envelope. I want you to put those verdict forms for which you have reached unanimous verdicts in this envelope, seal it, and when you're done ring for [the courtroom deputy], hand the envelope to [the courtroom deputy]. We are going to hold it in our vault under seal.

(Dkt. # 45 at 11.)

The jury returned to the Court at 9:00 a.m. on September 12, 2005 and immediately requested to listen to the audiotapes. See (Dkt. # 46 at 3). At 10:40 a.m., the jury presented their fourth message to the Court enquiring: "On two counts, we are a hung jury. What do we do at this point?" (Dkt. # 46 at 2.) The Court again assembled the parties and requested suggestions on the manner in which to respond to the jury's question. See (Dkt. # 46 at 2). Counsel for the Defendant requested that the Court provide the jury with the Allen charge and order further deliberations. See (Dkt. # 46 at 2). The Government stated that it had "nothing to add." (Dkt. # 46 at 2.) The Court decided to accept partial verdicts, reasoning:

> Well, this case was relatively short. The evidence was straightforward. The jury deliberated about a day and a half last week. I had received two previous messages indicating that they are having difficulty reaching verdicts on some of the counts, however, they were able to reach verdicts on – we don't know how many, but on a number of counts. I suggested that the jury place those verdicts upon which they were able to reach a unanimous verdict into a sealed

-7-

> envelope. It was placed in the custody of the courtroom deputy, and this morning I recommended that the jury return. And the jury has deliberated approximately an hour and a half this morning. Deliberations began, continued this morning at 9:00 this morning, and at approximately 10:30 the Court received this last message.
>
> This is the third time that the jury has looked for guidance from the Court.[5] On all three occasions, it's obvious that the jury is deadlocked on some counts. How many, we don't know, until this morning where it was indicated that they cannot reach verdicts on two of the five counts.
>
> Now, I don't know, of the other counts, whether the jury was able to unanimously agree on prior – we'll find out when I unseal the verdicts. I'm not aware whether they have been able to reach a verdict in any of the other counts this morning, but in any event, I think I've given the jury enough opportunity to deliberate. It was a straightforward case. The issues were not difficult or complex. The evidence was straightforward. I'm aware that the jury made several requests to listen to the audiotapes which we admitted into evidence, and the jury again this morning requested to . . . [l]isten to some of the audiotapes. And it was following that that [sic] the jury sent the message. So I'm not going to give the jury an <u>Allen</u> charge. I'm going to accept the partial verdicts.

(Dkt. # 46 at 3-4.)

The Court then called the jury into the courtroom, repeated the foregoing, and enquired whether the jury was able to reach any verdicts beyond those previously sealed. <u>See</u> (Dkt. # 46 at 5). The foreperson responded in the negative. <u>See</u> (Dkt. # 46 at 5).

The jury returned a verdict of not guilty against the Defendant on Count One of the Indictment. <u>See</u> (Dkt. # 39). The jury further returned a verdict of guilty against the Defendant on Counts Two and Five of the Indictment. <u>See</u> (Dkt. # 40; Dkt. # 41). The jury was unable to return a verdict against the Defendant on Counts Three and Four of the

---

[5]This was the fourth time the jury presented a question to the Court and the third occasion where the jury's question indicated that they had reached a unanimous verdicts as to several counts.

-8-

Indictment. At the Defendant's request, the Court polled the jury whereby each juror indicated their assent to the verdicts. See (Dkt. # 46 at 6-7). The Court accepted the verdicts and ordered the same filed. The Court declared a mistrial on Counts Three and Four of the Indictment.

The instant motion ensued.

**II.    LAW AND ANALYSIS**

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). When presented with a Rule 33 motion, the district court may weigh the evidence and assess the credibility of the witnesses; "it has often been said that [it] sits as a thirteenth juror." United States v. Solorio, 337 F.3d 580, 589 n.6 (6th Cir. 2003) (internal citations omitted).

The Defendant eschews an attack on the evidence and exclusively advances a claim of legal error. Specifically, the Defendant asserts that a new trial is warranted because the Court accepted and filed a "partial verdict from the jury without first properly instructing the jury on its option to issue a partial verdict or the consequences of doing so." (Dkt. # 47, Mem. at 1.) The Defendant contends that the "improper partial verdict instruction unduly interfered with the jury's deliberative process, violating both his Fifth and Sixth Amendment rights and warranting a new trial." (Dkt. # 47, Mem. at 1.)

Having the opportunity to assess the Defendant's legal challenge with a first-hand knowledge of the facts and circumstances at issue, this Court finds that the motion is without merit. Rule 31 of the Federal Rules of Criminal Procedure establishes the Court's authority

to take a partial verdict in a criminal case involving multiple counts against a single defendant.  See FED. R. CRIM. P. 31 (b)(2) ("If the jury cannot agree on all counts as to any defendant, the jury may return a verdict on those counts on which it has agreed."); see also United States v. Benedict, 95 F.3d 17, 20 (8th Cir. 1996) ("Although this circuit has not yet confronted the issue, all other circuits to consider the question have approved the practice. Similarly, we hold that the practice of taking a partial verdict in a single-defendant case is not per se invalid." (Citations omitted)).  It is equally well-established that a criminal defendant being tried by a jury is entitled to an uncoerced and unanimous verdict of that body.  See Lowenfield v. Phelps, 484 U.S. 231, 241 (1988).  The Court, therefore, must ensure that the taking of a partial verdict guarantees the defendant a free and unanimous verdict on those counts upon which the jury has arrived at a decision as well as those counts upon which the jury has not reached a conclusion.  See Benedict, 95 F.3d at 20 ("The danger inherent in taking a partial verdict is the premature conversion of a tentative jury vote into an irrevocable one." (Citations omitted)).

Turning to the matter at hand, a series of factual inaccuracies and erroneous implications plague the Defendant's motion.  For instance, when the jury indicated in its second question that it was concerned with the effect on the overall trial if it failed to reach a unanimous verdict on "one of the five counts," the Court adopted the Defendant's suggestion that it re-instruct the jury as to the requirement of reaching unanimity on each of the separate counts.  See (Dkt. # 45 at 6).  The Court accordingly crafted an instruction

mirroring the Sixth Circuit Pattern Instructions regarding supplemental responses[6] and separate consideration of a single defendant charged with multiple crimes[7]. The Court and the parties recognized, however, that the proposed supplemental instruction did not address the jury's specific question – that is, the effect on the overall trial in the event the jury was unable to reach a unanimous verdict on one of the five counts.[8] In order to respond the

---

[6]Sixth Circuit Pattern Instruction 9.01 provides:

> (1) Members of the jury, I have received a note from you that says _____.
>
> (2) Let me respond by instructing you as follows: _____.
>
> (3) Keep in mind that you should consider what I have just said together with all the other instructions that I gave you earlier. All these instructions are important, and you should consider them together as a whole.
>
> (4) I would ask that you now return to the jury room and resume your deliberations.

[7]Sixth Circuit Pattern Instruction 2.01A provides:

> (1) The defendant has been charged with several crimes. The number of charges is no evidence of guilt, and this should not influence your decision in any way. It is your duty to separately consider the evidence that relates to each charge, and to return a separate verdict for each one. For each charge, you must decide whether the government has presented proof beyond a reasonable doubt that the defendant is guilty of that particular charge.
>
> (2) Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any of the other charges.

[8]For example, in searching for a direct answer to the jury's question, counsel for the Defendant queried: "Is it appropriate to tell the jury if you're not unanimous, that that [sic] will result in a hung jury." (Dkt. # 45 at 6.) Recognizing that such an instruction was akin to the Allen charge defense counsel had just described as "premature," the Court pursued other

-11-

juror's question, the Court utilized the initial two sentences of the Sixth Circuit Pattern Instruction pertaining to partial verdicts.[9] As indicated *supra*, the Court advised the jury: "Members of the jury, you do not have to reach unanimous agreement on all the charges before returning a verdict on some of them.  If you have reached unanimous agreement on some of the charges, you may return a verdict on those charges, and then continue deliberating on the others."  (Dkt. # 45 at 8.)  Neither party objected to the Court's supplemental instruction.

In contrast to the Defendant's contention that the Court failed to provide the jury with the entirety of the Sixth Circuit Pattern Instruction regarding partial verdicts, the record demonstrates that the remaining provisions of the pattern instruction necessarily were omitted in the light of the Court's express indication that it would not accept a partial verdict at that time.  During an off-the-record discussion, the parties discussed with the Court the prospect of accepting a partial verdict.  The factors giving rise to the discussion were two-fold:(1) it

---

alternatives.

[9]Sixth Circuit Pattern Instruction 9.03 provides:

(1) Members of the jury, you do not have to reach unanimous agreement on all the charges before returning a verdict on some of them.  If you have reached unanimous agreement on some of the charges, you may return a verdict on those charges, and then continue deliberating on the others.  You do not have to do this, but you can if you wish.

(2)  If you do choose to return a verdict on some of the charges now, that verdict will be final.  You will not be able to change your minds about it later on.

(3) Your other option is to wait until the end of your deliberations, and return all your verdicts then. The choice is yours.

(4) I would ask that you now return to the jury room and resume your deliberation.

appeared by implication from the jury's question that the jury was undecided as to only one of the five counts; and (2) identical statutory penalties would govern in the event that the Defendant was convicted of any one of the five counts.[10]  Nevertheless, the Court immediately advised the parties that it would not accept a partial verdict. See (Dkt. # 49 at 3).  Quite simply, the remaining provisions of the Sixth Circuit Pattern Instruction were a nullity as the Court was unwilling to accept a partial verdict. See United States v. Combs, 33 F.3d 667, 670 (6th Cir. 1994) ("In response to a jury's question after it has begun deliberating, however, a trial judge may and should make clear the law the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its decision.").

The subsequent proceedings reveal that no prejudice stemmed from the Court's hybrid supplemental instruction. See Combs, 33 F.3d at 670 ("[T]he propriety of a supplemental instruction must be measured 'by whether it fairly responds to the jury's inquiry without creating . . . prejudice.'"  (Quoting United States v. Nunez, 889 F.2d 1564, 1568 (6th Cir. 1989))).  Approximately fifteen minutes after the Court responded to the jury's second question, the jury queried: "What do we do with the verdict forms if we finished deliberating all five counts and are unable to reach a unanimous agreement on some of the counts?" (Dkt. # 45 at 9.)  The jury's question demonstrated that it appeared inclined to render a partial verdict.  However, the Court again expressed its disinclination to accept any partial verdict.  The Court advised that parties that it intended "to send the jury home and have them return

---

[10]As indicated in the Report, for each count the statutory minimum sentencing range was a mandatory minimum of ten years to life imprisonment and a Guidelines range of 360 months to life.

on Monday and continue with deliberations." (Dkt. # 49 at 9.)  It followed that a partial verdict instruction was unnecessary as the Court was inclined to accept only a complete verdict.

Prior to discharging the jury for the weekend, defense counsel raised the issue that now serves as the basis for the present motion; namely, the sealing of those verdicts where the jury had reached a unanimous verdict.  Defense counsel enquired of the Court: "And are we going to seal what they've completed or what they have." (Dkt. # 45 at 10.)  The Court advised the jury:

> What I'm going to do is, my suggestion is that you go home.  You've been deliberating for a day and a half, and I think the wise thing to do now is to have you go home this evening, return on Monday, and continue with your deliberations.  I'm going to hand you an envelop.  I want you to put those verdict forms for which you have reached unanimous verdicts in this envelop, seal it, and when you're done ring for [the Courtroom Deputy], hand the envelope to [the Courtroom Deputy].  We are going to hold it in our vault under seal.

(Dkt. # 45 at 11.)

The Defendant asserts that the Court's sealing of the jury's unanimous verdicts prior to the cessation of deliberations was tantamount to the acceptance of partial verdicts without providing the jury with a supplemental instruction regarding the impact and consequences of the same.

The factual predicate giving rise to the sealing of the unanimous verdicts belies the Defendant's assertion of legal error.  The Court expressly indicated in intention to permit the jury to re-commence deliberations the following Monday.  The Defendant intervened and raised the notion of sealing the unanimous verdicts.  The Court agreed with the Defendant's

-14-

suggestion. With the benefit of hindsight, instructing the jury regarding the taking of a partial verdict and returning the sealed verdicts to the jury on Monday may have curbed the present proceedings. However, the Defendant neither requested a partial verdict instruction at any time during the proceedings, nor requested that the jury receive the sealed verdicts upon the re-commencement of deliberations. The Defendant cannot now claim legal error arising from the scenario that he created. Indeed, defense counsel's conduct runs perilously close to an intentionally and impermissible attempt to create error.

Notwithstanding the existence of a more prudent course of action, the Defendant fails to demonstrate that the Court's failure to instruct the jury as to the implications of rendering a partial verdict warrants a new trial. There lacks any controlling authority requiring the Court to instruct the jury regarding the taking of a partial verdict. Cf. United States v. Clinton, 338 F.3d 483 (6th Cir. 2003) (finding no error where jury enquired as to a potential partial verdict and the court did not utilize Sixth Circuit Pattern Instruction 9.03). In United States v. Haren, 952 F.2d 190 (8th Cir. 1991), the United States Court of Appeals for the Eighth Circuit determined that the district court had accepted partial verdicts in a manner "not incompatible with Rule 31" when it sealed several verdicts, permitted the jury to continue deliberations, and ultimately accepted the verdict absent a partial verdict instruction. Id. at 197. There, the Government charged five individuals with drug offenses and tried the case to a jury. Id. After four hours of deliberations, the jury advised the court that it had reached a decision regarding four co-defendants, but that it was hung as to the remaining defendant. Id. The jury requested to listen to the testimony of a witness in order to reach a decision as to the remaining co-defendant. Id. The court ordered the jury to place the

verdicts reached into a sealed envelope and deposit the envelope with the court. Id. The jury then reheard the witnesses's testimony and delivered the remaining verdict to the court. Id. All five verdicts were announced and the jury was polled, each juror acknowledging agreement with all of the verdicts.

> The Eighth Circuit rejected the defendant's challenge to the partial verdicts, opining:
>
> When the jury asked to rehear [the witnesses's] testimony, however, it clearly expressed that it was undecided only about co-defendant Lewis. The jury had already reached a verdict as to all other co-defendants, and had completed those verdict forms. . . .Even though the judge did not collect these forms until after [the witnesses's] direct testimony was reheard, the handling of the verdict forms was not incompatible with Rule 31. The jury had ample time to consider and reconsider its verdicts and never asked to have the forms returned to them after rehearing the testimony. Moreover the jurors were polled and the verdicts were read.

Id.

As in Haren, the jury in the case at bar unequivocally advised the Court that it had reached a unanimous verdict as to at least one count and remained deadlocked on "one" or "some" of the counts. While the Court required the jury to continue its deliberations as to the undecided counts, the Court adopted the Defendant's suggestion of sealing those verdict(s) where the jury reached a unanimous verdict. Again, as in Haren, the Court did not provide the jury with a partial verdict instruction, nor did the jury later request to review the sealed verdict forms.  Thus, this Court is left with the inescapable conclusion that it accepted the jury's partial verdict in a manner consistent with Rule 31.

Additionally, the Defendant presents no argument indicating that the jury was less than unanimous in its verdict. The jury was polled and each juror indicated his or her assent to the verdicts. See United States v. Rivas, 99 F.3d 170 (5th Cir. 1996).

Finally, the Court reiterates that on no occasion during the jury's deliberations did the Defendant request that the Court instruct the jury regarding the taking of a partial verdict. The lone supplemental instruction requested by the jury was that the Court utilize the <u>Allen</u> charge on the final day of deliberations.[11] The Defendant does not raise the issue of the <u>Allen</u>

---

[11] The Pattern Jury Instruction for an <u>Allen</u> charge reads as follows:

(1) Members of the jury, I am going to ask that you return to the jury room and deliberate further.  I realize that you are having some difficulty reaching unanimous agreement, but that is not unusual.  And sometimes after further discussion, jurors are able to work out their differences and agree.

(2) Please keep in mind how very important it is for you to reach unanimous agreement.  If you cannot agree, and if this case is tried again, there is no reason to believe that any new evidence will be presented, or that the next twelve jurors will be any more conscientious and impartial than you are.

(3) Let me remind you that it is your duty as jurors to talk with each other about the case; to listen carefully and respectfully to each other's views; and to keep an open mind as you listen to what your fellow jurors have to say.  And let me remind you that it is your duty to make every reasonable effort you can to reach unanimous agreement.  Each of you, whether you are in the majority or the minority, ought to seriously reconsider your position in light of the fact that other jurors, who are just as conscientious and impartial as you are, have come to a different conclusion.

(4) Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced.  And those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt you have is a reasonable one, given that other members of the jury do not share your doubt.  None of you should hesitate to change your mind if, after reconsidering things, you are convinced that other jurors are right and that your original position was wrong.

(5) But remember this. Do not ever change your mind just because other jurors see things differently, or just to get the case over with. As I told you before, in the end, your vote must be exactly that--your own vote. As important as it is for you to reach unanimous agreement, it is just as important that you do so honestly and in good conscience.

charge in the present motion and, for the reasons stated in the record, finds any such assertion without merit.

### III. CONCLUSION

For the foregoing reasons, the Court finds that record lacks any evidence indicating that a new trial is warranted in this matter. Accordingly, the Court hereby orders that the the Defendant Juan L. Heriot's Motion for New Trial, see (Dkt. # 47), is **DENIED**.

**IT IS SO ORDERED**.

>                         **s/ Peter C. Economus - November 15, 2005**
>                         **PETER C. ECONOMUS**
>                         **UNITED STATES DISTRICT JUDGE**

---

(6) What I have just said is not meant to rush or pressure you into agreeing on a verdict. Take as much time as you need to discuss things. There is no hurry.

(7) I would ask that you now return to the jury room and resume your deliberations.